UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAPER, ALLIED-INDUSTRIAL, CHEMICAL AND ENERGY WORKERS INTERNATIONAL UNION, LOCAL 1-9 AFL-CIO, CLC, )<br><br>Plaintiff, )<br>v. )<br><br>S.D. WARREN COMPANY d/b/a SAPPI FINE PAPER NORTH AMERICA (Somerset Plant), )<br><br>Defendant ) | Civil No. 03-225-B-W |

## ORDER ON MOTIONS TO STRIKE

In response to Plaintiff Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 1-9 AFL-CIO, CLC (PACE)'s Second Motion for Summary Judgment, Defendant S.D. Warren Company, d/b/a Sappi Fine Paper North America (Somerset Plant) (Sappi) filed two Motions to Strike.[1] (Docket # 41, 50). PACE has responded (Docket ## 45, 51), and has filed a Motion to Amend Paragraphs 1, 29, and 57 of its Reply Statement of Material Fact. (Docket # 51).

### I. Sappi's First Motion to Strike: What William Carver Would Have Done

William Carver, the Union's international representative, represented PACE at the arbitration hearing on July 11, 2003 now the subject of this action. *Plaintiff's Statement of Material Fact (PSMF)* at ¶ 6. In support of its Motion for Summary Judgment, PACE submitted an affidavit from Mr. Carver in which he says what he would have done at the arbitration hearing, had he known the employee's post-discharge conduct was at issue.[2] Characterizing

---

[1] Local Rule 56(e) has been amended to disallow motions to strike; Sappi's motions, however, were filed before the amendment.

[2] Sappi objects to Mr. Carver's Affidavit to the extent it serves as the evidentiary basis for PSMF ¶¶ 37-41, 46.

such statements as "speculative musings," Sappi argues that "self-serving speculation is no substitute" for personal knowledge. *Def.'s Mot. to Strike* at 1-2 (Docket # 41). PACE responds that Mr. Carver is offering testimony as an expert, not lay witness and, therefore, the evidence is admissible under Federal Rule of Evidence 702. *Pl.'s Response to Def.'s Mot. to Strike* at 1-4 (Docket # 45). PACE likens Mr. Carver's statements to an oncologist's statements by of what she would have done, if the mammography had revealed an abnormality. *Id.* at 2-3.

---

PSMF ¶ 37 states:
    If SAPPI had indicated that it was contending that Hotham had engaged in post-termination misconduct, and/or that such misconduct was supported by the testimony set out at page 121 of Company Exhibit 27, PACE would have presented testimony and evidence to rebut that contention, including evidence of the Company's past practice of not disciplining employees who received LTD benefits at times when they felt they could return to work. (Second Affidavit of Carver ¶ 40).

PSMF ¶ 38 states:
    If SAPPI had indicated that it was seeking a remedy including denial of any reinstatement, PACE would have proven that Hotham did not engage in post-termination misconduct, by, *inter alia,* demonstrating that the CBA at Article 53, paragraph 3 requires that an employee may not return to work from a medial leave of absence without clearance by SAPPI's medical department, nor ever cleared to return to work at SAPPI by his own doctor, as he continues to suffer from psychological distress related to that work. (Second Affidavit of Carver, ¶ 41).

PSMF ¶ 39 states:
    If SAPPI had indicated that it was seeking a remedy including denial of any reinstatement, PACE would have proven that Hotham did not engage in post-termination misconduct, by, *inter alia,* demonstrating that the CBA at Article 53, paragraph 3 requires that an employee may not return to work from a medical leave of absence without clearance by SAPPI's medical department. Hotham was never so cleared by SAPPI's medical department, nor ever cleared to return to work at SAPPI by his own doctor, as he continues to suffer from psychological distress related to that work. (Second Affidavit of Carter ¶ 42).

PSMF ¶ 40 states:
    If SAPPI had indicated that it was claiming that Hotham had engaged in post-termination misconduct, Carver would have addressed that in the Union's brief. Carver did not address that issue in the Union's brief. (Carver Affidavit ¶ 43).

PSMF ¶ 41 states:
    If SAPPI had indicated that it was claiming that Hotham had engaged in fraudulent collection of benefits from the Company, Carver would have addressed that in the Union's brief. Carver did not address that issue in the Union's brief. (Carver Affidavit ¶ 44).

PSMF ¶ 46:
    If Carver had been advised or learned that there was an issue of misconduct other than the events of July 15, 2002, on which the Company was contending Hotham's employment should be terminated, he would have asked the Company to state the issue, and would have asked for an opportunity to present evidence on the issue. (Second Affidavit of Carver ¶ 23).

Sappi's Motion highlights the interplay between the obligation of the party seeking to vacate an arbitration award to provide a sufficient record of the proceedings, *see Westerbeke Corp. v. Daihatsu Motor Co.,* 162 F. Supp. 2d 278, 283 n.3 (S.D.N.Y. 2001), *reversed on other grounds,* 304 F.3d 200 (2d Cir. 2002), and the practice of ruling on motions to vacate arbitration awards through motions for summary judgment. *See Airline Pilots Ass'n Int'l v. Pan Am Corp.,* 405 F.3d 25, 30 (1st Cir. 2005). Under the familiar rubric, in ruling on a motion for summary judgment, a court is required to view the record in a light most favorable to the non-moving party, *Nicolo v. Philip Morris, Inc.,* 201 F.3d 29, 22 (1st Cir. 2000), and must rely either on uncontested facts or on the non-movant's version, if properly placed in conflict.

Where, as here, the moving party objects to the arbitration award, a failure to supply an undisputed record falls against PACE. Because Sappi denied the PACE SMFs that rely on the offending portions of the Carver affidavit, for purposes of ruling on the motion for summary judgment, the statements are disputed. It is, therefore, unnecessary to reach whether the objected to portions of the Carver affidavit could have or should have been admissible into evidence, because once properly disputed, PSMF paragraphs 37-41 and 46 are not considered anyway.[3]

**II.  The Second Motion to Strike:  PACE's Reply To Sappi's Statement of Material Facts and PACE's Motion To Amend Reply**

In its second motion to strike, Sappi contends four of PACE's responses to its Additional Statement of Material Fact violate Local Rule 56 by responding with facts not relevant to its denials or qualifications. Focusing on paragraphs 1, 2, 29, and 57, Sappi's concern is that PACE has interposed facts to which under the rules it cannot respond.

---

[3] No doubt, PACE considers the Sappi objections improper. Rather than try and chase the tail of this argument, in the arbitration context, the reviewing court may not resolve such factual disputes. PACE asserts that Mr. Carver would have taken certain actions, if the post-discharge misconduct issue had been raised; Sappi responds the issue was raised and Mr. Carver failed to do anything. Leaving aside whether it should do so, this Court cannot begin to assess who is right, absent a record upon which to make an informed judgment.

3

### A. Sappi's Motion to Strike PACE Responses and PACE's Motion to Amend Its Responses to Paragraphs 1, 29 and 57

Sappi moves to strike PACE's responses to paragraphs 1, 29 and 57, because after admitting the paragraphs, PACE supplied a lengthy set of additional facts. Sappi contends the court should disregard every response after "Admitted." PACE concedes Sappi's point is "well taken" and moves to amend its reply to insert for the word, "Admit," the following phrase:

> Qualified: Defendant's Opposing Statement of Fact is literally true, but incomplete, and would tend to mislead the Court as to the true state of affairs.

*Pl's Response and Motion to Amend* at 4. Sappi objects to the Motion to Amend, noting that if the statements of material fact are "literally true," they must be admitted without qualification. *Def's Reply* at 2.

Under Local Rule 56, the court will discount any statement or response containing "irrelevant argument or factual assertions that are not supported by appropriate record citation." *Burrell v. Anderson,* 353 F. Supp. 2d 55, 59 (D. Me. 2005); *Toomey v. UNUM Life Ins. Co.*, 324 F.Supp.2d 220, 222 (D. Me 2004); *Currier Builders, Inc. v. Town of York*, 2002 U.S. Dist. LEXIS 9942 * 14 (D. Me. 2002) ("numerous decisions of this court have held that new factual assertions submitted with a reply to the opposition to a motion for summary judgment in the absence of a request for leave to do so will be disregarded by the court.").

#### 1. Sappi Statement of Material Fact Paragraph 1

Sappi's Opposing Statement of Material Fact ¶ 1 states:

No transcript of the July 11, 2003 arbitration concerning Tracy Hotham's discharge was produced nor was a recording made.

This statement is either true or not. PACE concedes the statement is true, but seeks to reframe the statement to explain not whether it is true, but why it is true.[4] PACE's response is argument, not what the rules contemplate.

### 2. Sappi's Statement of Material Fact Paragraph 29

Sappi's Opposing Statement of Material Fact ¶ 29 states:

> At page 121, Mr. Hotham testifies that he filed a Petition for Reinstatement on November 22, 2002, and that he first felt able to return to work around the third week of September, 2002.

This statement refers to a portion of a transcript of the employee's testimony. Mr. Hotham either did or did not say what paragraph 29 says he said.

PACE, however, seeks to respond not to whether paragraph 29 is true, but to the general context of his statement. The qualified response states:

> Admitted. However, Rodney Hiltz has been a member of the Maine Workers Compensation Board for over two years, having been appointed by Governor King in October 2002. As a member, he is very familiar with procedures before the Board, and familiar with the laws applied. When a worker files a Petition for Reinstatement under 26 M.R.S.A. §218, such as the petition referred to in Company Exhibit 27, page 121, he is claiming that he can perform a job, with or without accommodation. As an officer of Local 1-9 for 10 years, Hiltz is also very familiar with SAPPI's procedures for medical leaves, return to work, and STD, LTD and other benefits. As reflected in Company Exhibit 2, during the first two years of Mr. Hotham's disability, he was eligible for LTD benefits if he was unable to perform all the material duties of his own occupation. After 2 years, he would be required to be disabled from performing any occupation in order to remain eligible for LTD benefits. The Collective Bargaining Agreement at page 70, Article 53 Mill Rules, paragraph 3 requires that when an employee is absent from work for three or more days for sickness or illness, he must be cleared by the Company's medical department before reporting for duty. Tracy Hotham was

---

[4] PACE states in ¶ 1 of its response:
> Admitted. However, Carver has been International Representative for PACE/UPIU since 1992 and has represented the Union and its Locals in more than 100 arbitrations. Before that, as an officer of Local 1-1069 in Westbrook for over 25 years, he helped to represent the Local in easily over 100 arbitrations. It is rare for parties to have a transcript made of an arbitration hearing. Of all the hundreds of arbitrations Carver has attended, no more than 20 were recorded by a court reporter, and these were all at a single employer which liked to have a transcript made. Carver has never knows of a party to tape record an arbitration hearing. Occasionally, an arbitrator will tape record a hearing but that tape is always "for the arbitrator's own use" and is not available to the parties.

> never cleared for return to work. His disability was psychological: neither his treating physicians nor the mill physicians have never indicated that he is able to return to work at the SAPPI mill. SAPPI has never allowed an employee to return to work solely on the basis that he says he feels he can do his job, or even on the basis of his doctor saying he can do his job. The Company always has its own physician's assistant (for the past several years Chris Luck) decide if a return to work is possible, and there have been several occasions when an employee has stated that he feels he can do his job, but the Company has disagreed and has not let the person return to work. On many occasions, the Union has had to fight to get the employee back to work. SAPPI has never required an employee to waive all LTD, STD or other benefits while awaiting the Company's decision on whether to allow him to return to work. The Company has never contended that an employee who was on LTD, or workers compensation or Sickness & Accident insurance, who was asking to return to work but had not been cleared by the Company to return, was engaging in fraud, or fraudulently receiving those benefits.

PACE's extended qualification is a textbook example of what should not be done. PACE's response is not relevant to whether the Sappi statement of material fact is true.

### 3. Sappi's Statement of Material Fact Paragraph 57

In paragraph 57, Sappi states:

> The Union's brief did not address any of the evidence of Mr. Hotham's misconduct introduced at arbitration, including (1) the testimony of Chris Luck concerning Mr. Hotham's being "put out of work", (2) the testimony of Mr. Hall that Mr. Hotham asked to be bought out, (3) any of the exhibits dealing with receipt of long-term disability benefits, or (4) Company Exhibit 5, demonstrating Mr. Hotham's failure to reveal his receipt of disability benefits when asked about income under oath.

PACE seeks to qualify its response to paragraph 57 to explain why, not whether, the brief did not address these issues. The response states that Mr. Carver understood all these matters went to Mr. Hotham's credibility and character, which he did not believe were at issue. PACE's response goes on to state: "No issue had ever been raised about fraud or other post-termination misconduct by SAPPI, nor any question raised that Hotham should be denied reinstatement, regardless of the Arbitrator's conclusion with respect to the proper cause issue." These

qualifications are argumentative, not relevant to whether the Sappi statement of material fact is true.

### 4. Conclusion

Comparing the Sappi's statements to the PACE responses, this Court grants the Sappi Motion to Strike the PACE responses to paragraphs 1, 29 and 57 and denies the PACE Motion to Amend responses.

### B. Sappi's Motion to Strike PACE's Response to Paragraph 2

Sappi's Statement of Material Fact paragraph 2 states:

> Neither the governing collective bargaining agreement nor the rules of the American Arbitration Association contain any requirement that the parties exchange exhibits or otherwise engage in pre-hearing discovery and it has not been the practice of SAPPI and PACE Local 9 to engage in such pre-hearing procedures.

PACE responded:

> Qualified. PACE admits that the rules of the American Arbitration Association contain no requirement that the parties exchange exhibits or otherwise engage in pre-hearing discovery. However, the Collective Bargaining Agreement (Attachment A to Application to Vacate) at Article 45, Grievance Procedure, requires that when a grievance is filed, the Company and the Union must process it through 3 steps before it goes to arbitration. At these steps, the parties state their positions concerning a grievance, and attempt to resolve the grievance.
> The purpose of the grievance procedure is to allow the parties a full opportunity to air their positions, to learn the positions of the other party, and to make a good faith attempt to resolve the grievance. These steps are, in effect, discovery procedures, and they are an essential part of the grievance process. By those procedures, Carver estimates that 99% of the grievances are in fact resolved without the need to go to arbitration.
> Carver has handled dozens of discharge grievances at SAPPI, and in every case, the Company has stated the reasons for discharge and the reasons that it will or will not reinstate the employee during the grievance process. Carver necessarily relies on the Company's statements at the grievance procedure, as well as documentary evidence, to know what positions the Company will take at arbitration.
> In these numerous discharge cases, SAPPI has never concealed a reason for discharge, or a reason for refusing to reinstate an employee, and then raised that reason at arbitration. This Hotham case is the first time that SAPPI has ever

7

> raised a new reason for discharging an employee, or for denying an employee reinstatement, in its brief, rather than raising the reason during the grievance process and the arbitration hearing.
> In the pre-arbitration steps of the grievance procedure relating to Tracy Hotham's discharge, SAPPI never raised any issue concerning Hotham's pre-discharge "attitude," including his requesting a buy-out, or any issue concerning Hotham's post-discharge misconduct, including any allegation that he had fraudulently sought LTD benefits.

PACE's response is argumentative and overly long. Sappi's Statement of Material Fact paragraph 2 was limited to pre-hearing discovery under AAA rules and PACE-Sappi prior practice. Instead of responding to the statement, PACE used Local Rule 56(d) to make points about the merits of its case. PACE's response should have been limited to its assertion that in their past practice, the Union and PACE have provided for discovery of the other side's case through the course of the step grievance process. With this exception, this Court grants Sappi's motion to strike PACE's response to Sappi's Statement of Material Fact paragraph 2.

### III. CONCLUSION

1. Defendant Sappi's Motion to Strike Evidence Submitted in Support of Second Motion for Summary Judgment (Docket # 41) is DENIED.

2. Defendant Sappi's Second Motion to Strike (Docket #50) is GRANTED as to PACE's Replies to Sappi Paragraphs 1, 29, and 57 and is GRANTED in part and DENIED in part as to PACE's Replies to Sappi Paragraph 2.

3. Plaintiff PACE's Motion to Amend Paragraphs 1, 29, and 57 (Docket # 51) is DENIED.

**SO ORDERED.**

>  /s/ John A. Woodcock, Jr.
>  JOHN A. WOODCOCK, JR.
>  UNITED STATES DISTRICT JUDGE

Dated this 24th day of June, 2005