## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **PAPER, ALLIED-INDUSTRIAL,** | ) | |
| **CHEMICAL AND ENERGY WORKERS** | ) | |
| **INTERNATIONAL UNION, LOCAL 1-9** | ) | |
| **AFL-CIO, CLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No. 03-225-B-W** |
| | ) | |
| **S.D. WARREN COMPANY d/b/a SAPPI** | ) | |
| **FINE PAPER NORTH AMERICA** | ) | |
| **(Somerset Plant),** | ) | |
| | ) | |
| **Defendant** | ) | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Even though Tracy Hotham's employer violated the Collective Bargaining Agreement by discharging him without just cause, an arbitrator ruled he had no right to back pay and should not be reinstated to his job, because he had engaged in post-discharge misconduct. Dissatisfied with the arbitrator's ruling, Mr. Hotham's union, the Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 1-9, AFL-CIO, CLC (PACE) has challenged the award in favor of S.D. Warren Company d/b/a Sappi Fine Paper North America (Somerset Plant)(Sappi) on a variety of grounds, chief among them, that the arbitrator's ruling was grounded on issues and evidence never properly placed before him. This Court concludes that PACE has failed to provide a sufficient record upon which this Court can determine whether the arbitrator exceeded his authority and that PACE has also failed to demonstrate that the arbitrator's award violated the Collective Bargaining Agreement's (CBA) no-modification clause. This Court, therefore, denies PACE's motion for summary judgment and grants judgment in favor of Sappi.

### I.     PROCEDURAL BACKGROUND

On December 5, 2003, PACE initiated in state court an Application to Vacate, Modify or Correct Award. Sappi removed the case to this Court and after an inconclusive initial skirmish, PACE filed the Second Motion for Summary Judgment now before the Court. (Docket # 37).

## II. FACTUAL BACKGROUND

### A. The Collective Bargaining Agreement

PACE and Sappi entered into a labor agreement from December 19, 1996 to and including January 31, 2003. *See Labor Agreement* (Attachment # 3 to *PACE Application*) (Docket # 1). The agreement provided that if a labor-management dispute or complaint was not resolved through the first three steps of the grievance process, the party desiring arbitration could file written notice and copies with the American Arbitration Association (AAA). *Id.* at 45.1 – Step 4. The agreement provided:

> The arbitration hearing… shall hear (sic) the evidence of both sides and render a decision which shall be final and binding on both parties.

*Id.* The CBA required the hearing be held "under the Voluntary Labor Arbitration Rules of the American Arbitration Association." *Id.* It further stated, however, that the Arbitrator "shall have no power to render a decision which adds to, subtracts from, or modifies the Agreement." *Id.*

### B. The Arbitration Hearing

Arbitrator Lawrence T. Holden held a one-day hearing on July 11. 2003. *Plaintiff's Statement of Material Fact* (PSMF) ¶ 6. PACE was represented by International Representative William Carver, and Sappi was represented by attorney Denis Cole. *Id.* There was no recording or transcript of the hearing. *Defendant's Statement of Material Fact* (DSMF) ¶ 1. The rules of the American Arbitration Association do not require that the parties exchange exhibits or otherwise engage in pre-hearing discovery. DSMF ¶ 2. After some discussion, the parties were

unable to agree on the issues to be submitted for decision, and the arbitrator said he would decide that issue.  PSMF ¶ 12.

### C.  The Arbitrator's Findings

This Court states the facts as the arbitrator found them.[1]  *Kraft Foods, Inc. v. Office & Prof'l Emples. Int'l Union, Local 1295*, 203 F.3d 98, 99 (1st Cir. 2000) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987)).

Tracy Hotham, a powered industrial truck (PIT) operator in the Company's Finishing/Shipping Department, had been employed by the Company for approximately 13 years.  He was discharged effective August 13, 2002 for operating a PIT in an unsafe manner on July 15, 2002.

In 1997, Mr. Hotham suffered severe injuries including the loss of a leg in an off-duty, automobile accident.  He was absent from work for more than two years.  The Company voluntarily extended the time beyond which it was obligated to take him back, and then when he did return to work, the Company placed him in a job which was compatible with his physical limitations, namely PIT operator.  On December 6, 2000, Mr. Hotham backed his PIT accidentally into a core rack, which set in motion a chain reaction resulting in a broken leg for another employee.

On June 11 and 12, 2001, November 30, 2001, and January 10, 2002, he underwent additional PIT training.

On January 15, 2002, Mr. Hotham was involved in another incident wherein he had operated his PIT with a load that exceeded the PIT's rated capacity.  No harm occurred even though the rear wheels of his PIT had come off the ground several times.  This incident was

---

[1] This opinion sets forth the Arbitrator's Decision virtually verbatim, changing references appropriate for the grievance stage of the proceedings.  Mr. Hotham, for example, has been substituted for "grievant."

observed and reported by another bargaining unit employee.  Mr. Hotham was warned at the time to adhere to proper safety practice, and that failure to do so would place his job in jeopardy. He was also required to undergo yet another PIT training course before operating his PIT again.

In effect at the time of the January 15, 2002 incident was a memorandum of agreement, dated March 1, 2001, that established an incident investigation procedure.  Its purpose was to encourage the reporting of unsafe practices or incidents by bargaining unit employees.   It provided that if one employee reported an unsafe incident involving another employee, "no employee would be disciplined as a direct outcome of incident reporting or investigation."

In the spring of 2002, Mr. Hotham inquired as to whether the Company might be willing to buy out his employment.

Then, there occurred the incident of July 15, 2002 which is the subject of this (arbitration).   On the morning of July 15, 2002, Mr. Hotham was orally warned by Tech Specialist Charlie Hall to pay more attention to his duties as a PIT operator inasmuch as Mr. Hall had observed him bumping into roll heads.  Mr. Hotham responded to this warning by inquiring about a floating holiday.  During the afternoon of July 15, 2002, Mr. Hotham was lifting two paper rolls with the boom of his PIT when the PIT took a nosedive and the rear wheels rose three to four feet in the air.  The PIT then slammed down hard on the rear wheels.  Fortunately, neither Mr. Hotham nor any other employee was injured.  This incident was observed by Jack Ross, a management employee.

Immediately following this incident, Mr. Hotham was told the company was going to pull his PIT license; Mr. Hotham also believed that he was likely to be fired as a result of the July 15, 2002 incident.  Mr. Hotham experienced a stress reaction wherein he was having difficulty breathing and went to the Company's Medical Office where he was excused from work for the

rest of the day.  He then went to see his psychologist, Dr. Robert Kohl, and obtained a note to be excused from work until further notice.

Thereafter, Mr. Hotham applied for long-term disability (LTD) benefits commencing on July 15, 2002.  Mr. Hotham began to receive LTD benefits effective January 14, 2003 to continue for twenty-four months.  Mr. Hotham admitted in another forum - a workers' compensation proceeding - that he was able to work while collecting LTD benefits.

In making the decision to discharge the grievant as a result of the incident of July 15, 2002, Plant Manager Cassese testified that she took the January 15, 2002 incident into account in disciplining the grievant.  Also, on Mr. Hotham's record was an oral warning he had received for leaving early on July 4, 2001.

A grievance was filed concerning the discharge of Mr. Hotham, and inasmuch as that grievance has remained unresolved, the Union has elected to bring the matter on to arbitration for resolution.  Mr. Hotham chose not to testify at the arbitration hearing.

### D.  The Arbitrator's Analysis

The arbitrator concluded Mr. Hotham's discharge was not for just cause, and ordered his discharge converted to a written warning.[2]  However, the arbitrator went on to state:

The inquiry does not end here however.  Post-discharge evidence was submitted which is of substantial concern.  It is accepted arbitral practice to receive post-discharge evidence which bears on the question of remedy.  (See in this regard the paper delivered by Arbitrator George Nicolau at the 43rd Proceedings of the National Academy of Arbitrators, pp. 73-88 (1990)).  Of

---

[2] In reaching this conclusion, the Arbitrator enforced the "safe haven" concept in a Memorandum of Agreement dated March 1, 2001.  He found the report of Mr. Hotham's unsafe act of January 15, 2002 fell within this safe haven and Sappi could not use that incident to determine the degree of discipline for a subsequent incident.  As of July 15, 2002, therefore, Mr. Hotham had only an oral warning for leaving work early for prior discipline.  Although the Arbitrator concluded the July 15, 2002 incident was an unsafe act, he concluded a written warning, not discharge, would have been the next step in the disciplinary process for Mr. Hotham.  The parties have not challenged this part of the Arbitrator's Award.

most serious concern was the post-discharge evidence wherein Mr. Hotham admitted in a workers' compensation proceeding that he was capable of working at his regular job in the Finishing/Shipping Department during the time he was receiving long-term disability (LTD) benefits from the Company. (Footnote 1 – Mr. Hotham began receiving such LTD benefits effective January 14, 2003 although he had applied for them effective July 15, 2002). (Co. Exh. # 27, p. 121). This acknowledgment raises serious concerns about his conduct toward the Company. In addition, Mr. Hotham's attitude toward the Company and his job is further revealed by his inquiry in the Spring of 2002 as to whether the Company was interested in buying out his employment. This inquiry was not made in a context where the Company was offering employment buy-outs. Given this conduct and attitude on the employee's part, I find that he is not entitled to reinstatement. Also, since he claimed that he was unable to work since July 15, 2002 and has, in fact, received LTD benefits for a portion of that period, he is not entitled to any back pay award.

### D. PACE's Causes of Action

PACE's Complaint contains three remaining counts[3]; each count asks the court to order a rehearing under 14 M.R.S.A. § 5938(3):

(1) <u>Count I</u>: PACE claims the arbitrator's award "failed to draw its essence from the CBA.";

(2) <u>Count II</u>: PACE claims the arbitrator ignored the CBA's provisions and "dispensed his own brand of industrial justice"; and,

---

[3] On February 26, 2004, PACE filed a motion for summary judgment on Counts III and IV. (Docket # 14). In her Recommended Decision dated June 4, 2004, Magistrate Judge Kravchuk not only recommended that PACE's motion for summary judgment on Counts III and IV be denied, but also strongly suggested they did not state a claim. *Report and Recommended Decision* at 21-23 (Docket # 26). At oral argument on November 8, 2004, PACE informed this Court it was no longer proceeding on Counts III and IV and by Order dated November 10, 2004, this Court granted without prejudice PACE's oral motion to dismiss them. *Order Affirming In Part and Rejecting In Part Recommended Decision of the Magistrate Judge* at 2, n.3 (Docket # 36).

(5) <u>Count V</u>:  Citing 14 M.R.S.A. § 5939(1)(B), PACE claims that by deciding the issue of remedy, the arbitrator acted in an manner inconsistent with the CBA, inconsistent with the evidence, and inconsistent with the procedural rights of PACE.

**E.  PACE's Complaint:  The Arbitrator Ruled On An Issue Not Before Him**

By obtaining a ruling that Mr. Hotham was not properly subject to discharge under the CBA, PACE won a significant battle, but by failing to gain back pay and reinstatement, it lost the war.  PACE contends it lost a war it did not know it was fighting.  PACE strenuously urges this Court to conclude the process was unfairly tainted because Sappi failed to raise before or during the arbitration hearing, Mr. Hotham's testimony at the workers' compensation hearing as a ground for denial of back pay and reinstatement.  PACE contends it was only after the close of the hearing and after PACE submitted its brief that Sappi for the first time asserted that Mr. Hotham's testimony at the workers' compensation hearing established he had been "fraudulently collecting benefits from the Company," *Pl.'s Second Mot. for Sum. Judg.* at 4-5 (citing *Post-Hearing Brief On Behalf of Sappi Fine Paper* at 3-4).  PACE accuses Sappi of playing "hide the ball," *Id.* at 11, and securing victory by indirection.

Without notice of what turned out to be the decisive issue, PACE argues it was deprived of an opportunity to present critical evidence and argument.  In this way, PACE contends the process and award were fatally flawed.  By issuing an award and fashioning a remedy on grounds not fairly raised and litigated, PACE asserts the arbitrator dispensed his own brand of industrial justice and that his decision failed to draw its essence from the CBA.

**III.    DISCUSSION**

   **A.  Applicable Statutory Law**

This Court has jurisdiction pursuant to 28 U.S.C. § 1332, since the parties are citizens of different states.[4]  PACE initiated this complaint in state court under 14 M.R.S.A. § 5938.  Once jurisdiction is established, this Court has the authority to confirm or vacate an arbitration award under 9 U.S.C. § 9, 10, 11.[5]  Both federal and state statutes provide that an arbitration award may be set aside where the arbitrator exceeded his powers, 9 U.S.C. § 10(a)(1); 14 M.R.S.A. § 5938(1)(A), or where the arbitrator issued an award on a matter not submitted for arbitration.  9 U.S.C. § 11(b); 14 M.R.S.A. § 5939(1)(B).

**B. Policy Considerations.**

Beyond the narrowness of the statutory justifications for vacating an arbitration award, the party seeking to vacate an award made pursuant to the provisions of a collective bargaining agreement faces two policy hurdles:  (1) a general judicial predisposition against overturning arbitration awards, *see Poland Spring Corp. v. UFCW,* 314 F.3d 29, 33 (1st Cir. 2002)("Judicial review of an arbitrator's decision is extremely narrow and deferential."); and, (2) a more specific reluctance to inject federal courts into an arbitration award issued under the terms of a collective bargaining process resolving a labor-management controversy.  *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596 (1960)("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements.").

---

[4] PACE originally filed this action in state of Maine Superior Court for Somerset County.  (Docket # 1, Attachments 2, 3).  Sappi removed the case to this Court on December 30, 2003 pursuant in part to its diversity jurisdiction.  (Docket # 1, Attachment 1).  This Court does not reach the question of whether it would have jurisdiction in the absence of such diversity.  *Compare Hogan v. 50 Sutton Place S. Owners, Inc.,* 919 F. Supp. 738, 745 (S.D.N.Y. 1996)(jurisdiction granted under 29 U.S.C. § 185); with *General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 968 (9th Cir. 1981), *cert. denied,* 455 U.S. 948 (1982), *reh denied* 456 U.S. 939 (1982)(applicants who seek confirmation of an arbitration award in federal court must demonstrate independent grounds of federal jurisdiction); *see also Transportation Cybernetics, Inc. v. Forest Transit Com.,* 950 F.2d 350,352 (7th Cir. 1991).

[5] 9 U.S.C. § 9 allows the parties to an arbitration to apply to the court for an order confirming the award and "thereupon, the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."

Arbitration has played an increasingly crucial role as the preferred method for resolving disputes arising over the interpretation or application of collective bargaining agreements. *United Steel Workers of America  v. American Mfg. Co*., 363 U.S. 564 (1960); *Enterprise Wheel*, 363 U.S. at 593.  In *Hoteles Condado Beach,* Judge Pieras succinctly described the benefits of arbitration:

> the arbitration process is more flexible, efficient, expedient, and less expensive than litigation; the arbitrator has more expertise in resolving controversies that arise under the industrial law of the shop than does a court of law; the parties have voluntarily agreed to submit its dispute to final and binding impartial adjudication; and arbitration is a favored alternative to other non-peaceful methods of conflict resolution, such as strikes, boycotts, etc.

*Hoteles Condado Beach v. Union de Tronquistas de Puerto Rico, Local 901*, 588 F. Supp. 679, 682 (D.P.R. 1984) (citations omitted).

### C.  Standards of Review

The  general  principles  of  judicial  review  are  well-known  and  set  forth  in  the  "time-honored standards of the *Steelworkers Triology.*"[6] *S.D. Warren Co., Div. of Scott Paper Co. v. United Paperworkers Int'l Union, AFL-CIO, Local 1069,* 845 F.2d 3, 5 (1st Cir. 1988).  The function of the court is  "very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator.  It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."  *Misco*, 484 U.S. at 36-37.  To that end, reviews of labor arbitral decisions are "extremely narrow and extraordinarily deferential."  *Bull HN Info. Sys. v. Hutson*, 229 F.3d 321, 330 (1st Cir. 2000).  Exceptions are few and limited.  *Teamsters Local Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59, 61 (1st Cir. 2000) ("disputers that are committed by contract to the arbitral process almost always are won or lost before the arbitrator.  Successful court challenges are few and far between."); *see also*

---

[6]  *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960).

*Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1049 (1st Cir. 1977).  Strong disagreement or skepticism of an arbitrator's rationale is not enough to vacate an arbitrator's decision, as long as the arbitrator is "even arguably construing or applying" the CBA.  *Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 11 (1st Cir. 2001).  Because "parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Kraft Foods*, 203 F.3d at 101 (quoting *Misco*, 484 U.S. at 37-38).

The First Circuit has "developed its own test for determining whether an arbitrator's award may be reviewed by a court." *Local 1445, United Food & Commercial Workers International Union v. Stop & Shop Cos.,* 776 F.2d 19, 21 (1st Cir. 1985).  In *Bettencourt,* 560 F.2d at 1050, the First Circuit held that a court may review and set aside an arbitrator's decision only if the decision was (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling; or, (3) mistakenly based on a crucial assumption that is concededly a non-fact.  *See also Wheelabrator Envirotech Operating Servs., v. Massachusetts Laborers Dist. Council Local 1144,* 88 F.3d 40, 43-44 (1st Cir. 1996); *Advest, Inc. v. McCarthy,* 914 F.2d 6, 8-9 (1st Cir. 1990); *Hoteles Condado Beach, La Concha & Convention Center  v. Union de Tronquistas Local 901*, 763 F.2d 34, 38 (1st Cir. 1985).  When a claim to set aside an arbitration award is made, the moving party bears the burden of proof.  *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992).

### D.  The Limits of Judicial Restraint:  Drawing Its Essence and Own Brand of Industrial Justice

The courts' deference to arbitration, although considerable, has its limits.  The arbitrator cannot ignore the contract and dispense "his own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597.  Rather, his decision must draw "its essence" from the labor agreement.  *Id.*  The decision to settle labor-management disputes is "a wholly voluntary decision by private parties, grounded on their will as expressed in the collective bargaining agreement."  *Poland Springs,* 314 F.3d at 33.  The "paramount point to be remembered in labor arbitration is that the power and authority of an arbitrator is totally derived from the collective bargaining agreement and that he violates his obligation to the parties if he substitutes 'his own brand of industrial justice' for what has been agreed to by the parties to that contract."  *Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union,* 864 F.2d 940, 944 (1st Cir. 1988)(quoting *Enterprise Wheel,* 363 U.S. at 597)). For example, in fashioning a remedy, the arbitrator does not have "unfettered discretion" and may not "impose a remedy which directly contradicts the express language of the collective bargaining agreement."  *Georgia-Pacific Corp.,* 864 F.2d at 945.  On the other hand, so long as the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority," a court may not disturb his judgment even if it is "convinced he committed serious error."  *Kraft Foods*, 203 F.3d at 101; *see also Advest,* 914 F.2d at 9.

### E.  What the Record Reveals

Whether the issue of post-discharge conduct was properly before the arbitrator depends on what the record reveals.  When there is a claim regarding an arbitration award that depends on the contents of the record before the arbitrator, "the court is under an obligation to scan the record."  *See Hughes,* 975 F.2d at 1258.  Here, this essential task simply cannot be performed.  Ordinarily, upon a controversy as to whether an issue was fairly raised or evidence properly

admitted, the reviewing court can make an independent determination by reviewing a transcript of the proceedings.  Here, there is no transcript.

In an effort to provide a record, PACE submitted certain documents and proposed statements of material fact.  PACE attached a copy of the arbitration award to its application,[7] *Pl.'s Application* ¶ 35, Attachment B, and it supplied a copy of the labor agreement in its statement of material fact.  PSMF ¶ 3, Attachment A.  In addition, PACE submitted forty-nine statements of material facts to which it attached two affidavits, setting forth witnesses' recollections of events at the arbitration hearing.  *Pl.'s Second Mot. for Summ. Judg.* at Ex. 1 (Second Affidavit of William Carver), Ex. 2 (Affidavit of Denis E. Cole).

But, PACE's attempt to provide a record has run aground.  First, PACE failed to place relevant documents before the court for review and this alone justifies denial of its motion.[8]  But, even as to the evidence properly before the Court, not all recollections coincide.  Sappi repeatedly denied, qualified, or objected to PACE's statements of material fact and PACE did the same responding to Sappi's statements of material fact.  *See* PSMF ¶¶ 4, 9–14, 16-20, 23-25, 27-48; DSMF ¶¶ 2, 6-9, 12-14, 16, 18, 20, 22, 25, 28, 30, 34–39, 43-46, 49-50, 54, 58.  Sappi also

---

[7] Even the arbitration award may not be properly before the court.  PACE's SMF assumes the award is a matter of record, presumably based on Sappi's Answer to paragraph 35 in PACE's Application, which referred to the award as Attachment B.  However, Sappi answered ¶ 35 by asserting that PACE was attempting to restate or characterize the decision, that the award speaks for itself, and to the extent the allegation required a response, Sappi denied the allegations contained in ¶ 35 of the Application.  This Court has construed Sappi's answer – that the award speaks for itself – as an admission that Attachment B was an accurate copy of the arbitration award.  PACE's SMF never addressed the need to authenticate the award.

[8] The collective bargaining agreement is before the court, because PACE referenced a copy in its SMF # 3 and Sappi admitted PACE's SMF # 3.  However, PACE failed to do the same for any other documents. For example, one of PACE's main points has been that when PACE filed it post-hearing brief, it did not mention Mr. Hotham's post-discharge conduct.  But, PACE did not place its post-hearing brief before the Court in its Motion for Summary Judgment.  PACE's SMF # 26 states only: "Both Carver and Cole submitted briefs on behalf of their respective parties."  It references paragraph 29 in an Affidavit of William Carver, which was submitted with its SMF, but paragraph 29 only states that "Both Cole and I submitted briefs on behalf of our respective parties."  *Affidavit of William Carver* at ¶ 29 (Docket # 37, Exhibit 1).  Although this Court can consider the admitted fact that both parties submitted post-hearing briefs, the Court cannot consider what was or was not in the briefs, because the briefs were never made a matter of record.  PACE's failure to place necessary documents before the Court in its Motion for Summary Judgment would be sufficient grounds to deny its motion, since the factual predicate for much of its argument is absent.

filed two motions to strike.  (Docket #'s 41, 50).  This leaves the Court with an arbitration record that is murky, truncated, and disputed.[9]  Oddly, the one matter upon which the parties have agreed is that they "were unable to agree on the issues to be submitted for decision by Arbitrator Holden at the hearing on July 11, 2003, and the Arbitrator said he would decide the issue."  PSMF ¶ 12.

### F.  The Moving Party's Obligation

It is PACE's obligation as the moving party to submit "the record" and any supplemental materials in support of its application.  *Hughes,* 975 F.2d at 1258 n.3.  *See also Lew Lieberbaum & Co. v. Randle*, 85 F. Supp. 2d 123, 126 (E.D.N.Y. 2000) ("It is the Petitioners' burden to demonstrate manifest disregard of the law, and the failure to offer the entire record leaves the Court unable to exclude the possibility that the award is supported by evidence that the Petitioner has not supplied."); *Green v. Progressive Asset Management, Inc*., 2000 WL 1229755, at *2 (S.D.N.Y. 2000) (Petitioner's failure "to supply a full record makes it impossible for the Court to

---

[9] PACE strenuously argues the issue of remedy was not before the arbitrator, but the record on this point is far from clear.  First, the parties agreed at the outset to disagree on what issues were to be resolved and the arbitrator agreed to decide that issue.  PSMF ¶ 12.  If the parties leave it to the arbitrator to decide what issues need to be resolved, they can hardly complain when he does what they ask.  *See JCI Communications, Inc. v. IBEW, Local 103,* 324 F.3d 42, 49 (1st Cir. 2003)("Once the submission to the arbitrators was made without…reservation, it was for the arbitrators to determine the scope of their own authority.")  Second, although it is apparently true that PACE did not address post-discharge conduct in its post-hearing brief, the brief was relatively brief, only five pages, and this Court cannot draw definitive conclusions from what PACE did not argue.  Silence is often strategic.

Presumably, Sappi had a purpose in seeking to admit (and PACE a purpose in objecting to) the 137 page transcript of Mr. Hotham's testimony before the Workers' Compensation Commission.  PSMF ¶ 17.  In fact, the parties agree that when PACE objected to the relevance of the transcript, Sappi responded that it had to do with "the remedy."  PSMF ¶ 17.  Contrary to PACE's contention, the record establishes that Sappi made it clear to both PACE and the arbitrator why it was seeking to introduce the transcript:  it was on the issue of remedy.  PACE cannot now be heard to contend the arbitrator's later use of the transcript on the issue of remedy came as a surprise.

Finally, once Sappi filed its post-hearing brief, PACE knew Sappi was asserting that the arbitrator should consider Mr. Hotham's post-discharge misconduct in formulating an appropriate remedy.  *See* PSMF ¶ 29.  PACE, however, failed to take any action to alert the arbitrator that this issue was not properly before him.  PACE explains its inaction by stating that "there is no provision for reply briefs or other response by Carver or PACE under American Arbitration Association rules."  *Pl.'s Second Mot. for Summ. Judg.* at 5.  However, PACE thought Sappi itself was breaking the rules by urging the arbitrator to base his decision on an issue neither litigated nor argued.  PACE's position is, therefore, anomalous:  that the rules prevented it from bringing a violation of the rules to the arbitrator's attention.  It is just as logical that PACE elected to see what the arbitrator decided and thus preserve the right to call foul, depending on the result.

determine whether the Panel's decision was based on a manifest disregard for the law or the evidence before it.  Because [Petitioner] bears the burden of proof, this failure is fatal to her motion.") (internal citations omitted); *Commonwealth Assocs. v. Letsos,* 40 F. Supp. 2d 170, 175 (S.D.N.Y. 1999); *Brown v. Premiere Designs, Inc*., 597 S.E.2d 466, 468 (Ga.App. 2004) ("the absence of a record or transcript precludes review of the Browns' claims of error committed by the arbitrator."); *Wittenberg v. Gallagher*, 2001 WL 34048121, at *3 (Ariz. Ct. App. 2001) ("we presume that the evidence produced in the arbitration supported the award particularly where, as here, Gallagher failed to provide any transcript or record of the arbitration proceedings."); *Clairol, Inc. v. Enertrac Corp*., 690 A.2d 418, 422  (Conn. App. Ct. 1997)("To determine whether that Clairol was, in fact, denied a full and fair hearing, the court would have had to review a complete transcript of the arbitration proceeding, and, in particular, the transcript of Thompson's testimony . . . Absent that transcript, it was impossible for the trial court to determine whether any of his testimony was detrimental to Clairol.");  *Motor Wheel Corp. v. Goodyear Tire & Rubber Co*., 647 N.E.2d 844, 850 (Ohio Ct. App. 1994) (Absent a verbatim transcript of the arbitration hearing, the court "must presume regularity of the arbitration proceedings and the resulting arbitration award.").

Facing this wall of authority, PACE retreats to policy.[10]  It asserts that as most arbitrations are not transcribed, a rule that requires transcription "would effectively prevent any

---

[10] PACE also asserts this issue is law of the case:  "SAPPI attempts to resurrects (sic) its prior argument, made to the Magistrate in its Motion to Dismiss, and rejected by her (that rejection then being adopted by this Court in its Order of November 10, 2004) that there can be no judicial review of this arbitration in the absence of a verbatim transcript."  *Pl.'s Reply* at 1 (Docket # 46).  PACE is incorrect.  It is true that in her Recommended Decision, Magistrate Judge Kravchuk concluded that the documentation before her was sufficient to "raise a reasonable inference that the issue of whether Hotham's post-discharge misconduct was a sufficient ground for denying Hotham's reinstatement was introduced in a manner that effectively prevented the Union from having an opportunity to present evidence and argument on that issue."  *Recommended Decision* at 4-5 (Docket # 26).  But, this Court rejected the Magistrate Judge's recommendation, except to the extent she recommended a denial of PACE's Motion for Summary Judgment on Counts III and IV.  *Order Affirming In Part and Rejecting In Part Recommended Decision of the Magistrate Judge* at 3 (Docket # 36).

judicial review of most labor arbitrations." *Pl.'s Reply* at 1-2 (Docket # 46).  The court's need to review a transcript of the arbitration hearing, however, applies where the moving party has complained of an issue that requires such review and where there is no substitute for a transcript.[11]  *See Westerbeke Corp. v. Daihatsu Motor Co.,* 162 F. Supp. 2d 278, 283 (S.D.N.Y. 2001), *reversed on other grounds*, 304 F.3d 200 (2d Cir. 2002)("…a party seeking to vacate an arbitration award must produce a record from the proceedings below that is 'sufficiently complete' for the court to make an informed judgment.")  Here, PACE contends the parties did not agree to submit post-discharge conduct to the arbitrator and Sappi responds they did.  The penalty for failing to provide a record of the arbitration hearing that would allow this Court to divine who is right, falls on PACE as the moving party.

### G.  The Impact of the Failure to Provide a Record

PACE's failure to supply a record of the arbitration proceeding does not necessarily mean all its claims must fail.  But, it does mean that to the extent its claims depend upon this Court's review of the record, they must fail.  Simply put, the truncated and disputed record before this Court prevents a fair determination as to the issues the parties agreed to present to the arbitrator and, thus, whether the arbitrator violated PACE's rights to present evidence and argue those issues.  To the extent an accurate record is necessary to determine whether the arbitrator's award failed to draw its essence from the CBA and allowed him to dispense his own brand of industrial justice, PACE's claim must fail as well.

---

[11] This Court understands PACE's policy point about the typical practice in arbitration hearings not to transcribe the hearing.  But, not all objections to arbitration awards depend upon a verbatim transcript and for those they do, there are alternatives that allow a sufficient record in its absence.  Documents that clarify the issues before the arbitrator, including pre-hearing filings, documentary evidence at the hearing, post-hearing memoranda, and similar documents; requests for admission; stipulations of counsel; and, similar means are all available.  If the parties wish to limit the arbitral issues, particularly if the limits are not clearly delineated in the labor agreement, they need to document with precision what the limits are.  Here, to the extent there is documentation of what issues were to be submitted, the parties agree that they could not agree and that they allowed the Arbitrator to decide what to decide. PSMF ¶ 12.

### H. Whether the Arbitrator's Award Violated the Terms of the Collective Bargaining Agreement

#### 1. The No-Modification Contract

The parties have placed the CBA before the Court and there is, therefore, a sufficient record to reach PACE's contention that the arbitration award violated the express terms of the CBA.[12]   Relying on *Kraft Foods,* PACE contends the arbitrator violated the "no-modification" clause in the CBA by imposing a remedy not provided for in the contract.  In *Kraft Foods,* the labor agreement provided:

> …the arbitrator shall have no authority to amend, alter, or modify this Agreement or its terms and shall limit the decision solely to the interpretation and application of this Agreement.

*Kraft Foods,* 203 F.3d at 101.  The First Circuit described this language as being a "standard 'no modification' clause."  *Id.*  This Court concludes the CBA here contains a standard "no-modification" clause.[13]   *See Id.*; *Larocque v. R.W.F., Inc.,* 8 F.3d 95, 97 (1st Cir. 1993)(describing language virtually identical to the language in the PACE-Sappi CBA as a "standard 'no-modification' clause"); *Local 1445, United Food & Commercial Workers International Union, AFL-CIO v. The Stop & Shop Companies,* 776 F.2d 19, 22 (1st Cir. 1985).

#### 2. The Arbitrator's Ruling and the No-Modification Contract

PACE contends that since the sole issue before the arbitrator was whether Sappi had breached the CBA by terminating Mr. Hotham without just cause, his conclusion that Mr. Hotham had committed other misconduct that justified the remedies of no back pay and no reinstatement went beyond the terms of the CBA.  As posed, however, PACE's argument

---

[12] This is another way of raising the question of whether the arbitrator's award failed to draw its essence from the CBA and whether he dispensed his own brand of industrial justice.  The Court is able to reach this issue despite the sparse record, because it can simply compare the terms of the CBA and the arbitration award.

[13] The CBA here contains language similar to the language in *Kraft*:  The Arbitrator shall have no power to render a decision which adds to, subtracts from, or modifies this Agreement.  CBA at § 45.1

depends upon what the parties agreed was at issue before the arbitrator and for the reasons set forth above, this Court cannot make a reasoned determination of that issue, since the record is inadequate.

Furthermore, other than the general proposition that an arbitrator cannot modify a "no-modification" contract, PACE points to no language in the CBA it claims the arbitrator improperly modified.  The typical "no-modification" issue arises when the arbitrator ordered a remedy the CBA expressly excluded or failed to order a remedy the CBA expressly imposed. *See e.g., Kraft,* 203 F.3d at 102 ("…the arbitrator's back-pay award had the effect of eliminating the break-in wage clause entirely during the time period in which Kraft had applied it in a discriminatory fashion."); *S.D. Warren Co. v. United Paperworkers Int'l Union, Local 1069*, 845 F.2d 3, 8 (1st Cir. 1988)(remedies "pre-determined" for violations); *Georgia-Pacific Corp. v. Local 27,* 864 F.2d 940, 944-45 (1st Cir. 1988)(employee committed offense listed in contract as ground for immediate discharge).  But, here, PACE makes no claim that the CBA forbids the refusal to award back pay or to reinstate an employee when he engages in post-discharge misconduct.

In addition, PACE's objection is to the arbitrator's remedy, and *Kraft* re-emphasized that where the agreement neither requires nor bars particular remedies, the arbitrator's discretion is "at its zenith."  *Airline Pilots Ass'n, Int'l v. Pan Am Corp.,* 405 F.3d 25, 31 (1st Cir. 2005) (quoting *Kraft,* 203 F.3d at 102).  Arbitrators' remedial choices "are not restricted to the array of anodynes proposed during the hearing." *Advest*, 914 F.2d at 10-11; *Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico*, 903 F.2d 857,869 (1st Cir. 1990).  If the parties "do not pre-negotiate remedies, the arbitrator can fashion them as part of his decisional

discretion." *S.D. Warren Co., Div. of Scott Paper Co., v. United Paperworkers' Int'l Union, AFL-CIO, Local 1069*, 845 F.2d 3, 8 (1st Cir. 1988).

Here, the parties could not agree on what issues were properly before the arbitrator and expressly authorized him to resolve this issue. PSMF ¶ 12. Once the arbitrator found that Mr. Hotham had engaged in serious post-discharge misconduct, there was nothing in the CBA that restricted his authority to remedy this misconduct by refusing to award back pay and reinstatement. *Airline Pilots,* 405 F.3d at 31 (quoting *Misco*, 484 U.S. at 38 ("where it is contemplated that the arbitrator will determine remedies . . . courts have no authority to disagree with his honest judgment in that respect")).

## IV.   CONCLUSION

This Court orders both the Plaintiff's Application to Vacate, Modify, or Correct the Arbitration Award and its Motion for Summary Judgment be DENIED. Judgment shall be entered in favor of Defendant S.D. Warren Company, d/b/a Sappi Fine Paper North America (Somerset Plant).[14]

**SO ORDERED.**

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of June, 2005

---

[14] A denial of a Plaintiff's motion for summary judgment does not usually result in judgment against the Plaintiff, because a ruling he is not entitled to a judgment is not the same as a ruling that the defendant is. Sappi has not moved for judgment in its favor. A cause of action to vacate, modify, or correct an arbitration award is, however, not a typical case. As Magistrate Judge Kravchuk aptly stated, PACE is not entitled to "full-blown litigation," *Recommended Decision* at 9, and this Court has treated PACE's Application as a motion, not a complaint. *Id.* at 7-10; 14 M.R.S.A. § 5942 (any application under the act "shall be made by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions."); *see also* 9 U.S.C. § 6. Rule 81 states that "[i]n proceedings under Title 9, U.S.C., relating to arbitration, . . . [the Civil Rules] apply only to the extent that matters of procedure are not provided for in [Title 9]." Fed R. Civ. P. 81(a)(3). Commonly, motions to affirm or vacate arbitration awards are resolved through motions for summary judgment. *See Airline Pilots,* 430 F.3d at 30; *JCI Communications,* 342 F.3d at 44, 48; *Poland Springs,* 314 F.3d at 29; *Kraft,* 203 F.3d at 99. Here, the cause of action is a motion and, therefore, the denial of PACE's motion is effectively a ruling against PACE on the merits and entitles Sappi to judgment in its favor.